# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLY CORIA, | 1:10-cv-00497 LJO GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KEN CLARK, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is represented in this action by Brandie Devall, Esq.

**RELEVANT HISTORY**[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction in Los Angeles County Superior Court in 1996 of second degree murder. Petitioner is serving a sentence of sixteen years to life with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he claims the Governor of California violated his due process rights in his 2009 decision reversing the decision of the

---

[1] This information is taken from the state court documents attached to Petitioner's petition and Respondent's answer and are not subject to dispute.

Board of Parole Hearings and finding Petitioner unsuitable for parole. Petitioner contends there was no evidence to support the finding that he currently posed an unreasonable risk of danger to the public if released.

Petitioner filed a habeas court petition challenging the Governor's 2009 decision in the Los Angeles County Superior Court on July 24, 2009. The petition was denied in a reasoned decision on September 23, 2009. Petitioner raised the same claims in petitions to the appellate court and California Supreme Court. Both petitions were summarily denied.

Petitioner filed the instant federal petition for writ of habeas corpus on March 19, 2010. Respondent filed an answer to the petition on June 2, 2010. Petitioner filed a traverse on June 10, 2010.

## STATEMENT OF FACTS[2]

The record reflects that on December 3, 1993, Petitioner saw members of the "MCA" gang, who he believed were responsible for previously beating his twin brother and decided to retaliate. He encouraged members of his "tagging crew", Adolph Torres, Rene Martinez and George Linares, to accompany him in attacking the group at a liquor store parking lot. Torres drove, while Martinez, who was armed with an automatic handgun that he showed to Petitioner, sat in the front seat. Petitioner and Linares sat in the back seat. Petitioner directed Torres to drive to the liquor store. As they drove by, Martinez fired the gun toward the group. Mayre Castelar, who was walking by the store with a friend, was hit in the chest and killed. Martinez then called out "LC", the name of the "tagging crew", and they drove away. Police responded to a radio broadcast and began following Petitioner's car. Torres led them in a high-speed chase before stopping. Martinez ran away, but Petitioner, Torres and Linares were apprehended.

Petitioner exercised his right to not speak about his commitment offense at the hearing. In his statement that was read into the record, Petitioner claimed that he only wanted to fight the gang members responsible for his brother's beating and did not think that Martinez would use the gun.

---

[2] This information is taken from the opinion of the superior court.

**DISCUSSION**

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal

law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.   Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.     Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme. Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010). "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the

prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
>> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>> (C) The victim was abused, defiled or mutilated during or after the offense.
>> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'
>
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

> (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
>
> (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.
>
> (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
>
> (4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

5

> (5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.
>
> (6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.
>
> (7) Age. The prisoner's present age reduces the probability of recidivism.
>
> (8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.
>
> (9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010). Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

6

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A.   Last Reasoned State Court Decision

In the last reasoned decision, the Los Angeles County Superior Court rejected Petitioner's claims as follows:

> The Governor is constitutionally authorized to make "an independent decision" as to parole suitability. [Citation.] Only a "modicum of evidence" is required. [Citation.] Here, the Governor reversed the Board of Parole Hearings ("Board") decision to grant the Petitioner parole primarily because of the Petitioner's commitment offense and his lack of insight into the offense.
>
> The Governor can properly rely upon the circumstances of the crime in deciding that the Petitioner is not presently suitable for parole. [Citation.] The Court finds that there is some evidence to support the Governor's finding that multiple victims were attacked or killed in the offense. Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(A). The Petitioner's crime partner fired at a group of several people, hitting and [sic] innocent bystander and killing her. The Governor also noted that the Petitioner's offense was premeditated and that he recruited his friends to attack the MCA gang members and then directed them to the liquor store. This provides some evidence that the offense was carried out in a dispassionate and calculated manner. Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(B).

7

After a long period of time, a commitment offense may no longer indicate a current risk of danger to society in light of a lengthy period of positive rehabilitation. [Citation.] Here, the Petitioner has participated in rehabilitative programming for less than 13 years. Further, as discussed below, the Governor also considered other factors that weigh against the Petitioner's suitability. In cases, such as this one, where other factors indicate a lack of rehabilitation, the aggravated circumstances of the offense may provide some evidence of current dangerousness, even decades after it is committed. [Citation.]

The Governor found that the Petitioner lacks insight into his offense and minimizes his role in the offense. The Governor noted that the Petitioner previously claimed that he did not know his crime partner had a gun, contrary to the opinion of the Court of Appeal. He also noted that the Petitioner now indicates that he did not expect his crime partner to use the gun. FN1. An inmate's version of the offense may indicate a lack of insight and provide a nexus between the offense and his current dangerousness. [Citation.] The Petitioner's continued claim that he did not think his crime partner would use a gun is some evidence of a lack of insight, in light of evidence in the record that indicates that the Petitioner directed his friends to attack the group at the liquor store and that he had full knowledge that Martinez both carried a gun and had pre-existing animosity toward the group.

> FN1. The Governor also stated that the Petitioner repeated his claim that he did not know Martinez had a gun at the 2008 parole suitability hearing. The Court finds no evidence in the record to support that contention.

The Governor also considered the Petitioner's serious 115 discipline in 2002 for participating in a race-motivated melee. Although the Petitioner provided a counter-chrono which indicated that he was not definitively identified as a violent actor in the melee, he was found guilty of the discipline. Additionally, the Governor noted that the Petitioner's psychological report indicated that his current gang affiliation is unknown and he tends to downplay his former involvement with the "tagging crew." While these factors, alone, may not justify a finding of suitability, the Governor may properly consider them as relevant to a determination of whether the Petitioner is suitable for parole. Cal. Code Regs., tit. 15, § 2402(b).

The Governor also considered the Petitioner's post-conviction gains, including his GED and college course, his vocations in landscaping, nursery, refrigeration and graphic arts, his work in welding, as well as his participation in numerous self-help programs. The Governor also noted that the Petitioner's 2008 psychological report indicated that he falls within the very low risk category for future violence. However, he still concluded that the Petitioner would pose an unreasonable threat to public safety. Penal Code § 3041(b). The Court finds that there is some evidence to support this determination because the Petitioner's continued minimization of his role in the offense and his prior associations, along with his somewhat recent discipline for participating in a melee provide a nexus between his commitment offense and his current dangerousness.

(See Pet'r's Pet. Ex. B.)

B.   2009 Governor Reversal

As discussed by the superior court, *supra*, the Governor found Petitioner unsuitable for parole based on the circumstances of the commitment offense, his lack of insight into the offense, his disciplinary history, and the uncertainties regarding his gang status.

1    The commitment offense involved Petitioner recruiting his associates to assist him in
2 retaliating against another group that was responsible for attacking Petitioner's twin brother.
3 Petitioner had directed the group to drive to a liquor store where the rival group was standing
4 around. As the vehicle drove by, Petitioner's associate fired indiscriminately into the crowd.
5 Sixteen-year old Mayre Castelar, who had been walking by the store with a friend, was hit in the
6 chest and killed. The Governor first noted that multiple victims were attacked based on the
7 associate's act of firing into a crowd of 10 to 15 people. Cal. Code Regs., tit. 15, §
8 2402(c)(1)(A). The Governor also found the offense was carried out in a calculated,
9 dispassionate, and execution-style manner, since the "tagging crew" had premeditated the drive-
10 by shooting and then carried it out against a group of people. Cal. Code Regs., tit. 15, §
11 2402(c)(1)(B). In light of these facts, the superior court determined that some evidence existed
12 to support the Governor's determination that the offense was especially heinous, atrocious or
13 cruel.

14    The California Supreme Court has held that "[t]he nature of the prisoner's offense, alone,
15 can constitute a sufficient basis for denying parole." In re Rosenkrantz, 29 Cal.4th 616, 682
16 (2002). However, in cases where prisoners have served their suggested base terms and have
17 demonstrated strong evidence of rehabilitation and no other evidence of current dangerousness,
18 the underlying circumstances of the commitment offense alone rarely will provide a valid basis
19 for denying parole. In re Lawrence, 44 Cal.4th 1191, 1211 (2008). In this case, at the time of the
20 Governor's reversal, Petitioner had only served 13 years of his 16 years to life sentence. And as
21 will be discussed below, there were reasons other than the underlying commitment offense for
22 the Governor's reversal. Therefore, the Governor could base his denial on the offense alone as
23 probative of current dangerousness.

24    In addition to the commitment offense itself, the Governor found that Petitioner lacked
25 insight into the circumstances of the offense and that he minimized his role. The Governor noted
26 that Petitioner had repeatedly claimed he did not know the associate had a gun and that the
27 associate would shoot someone. However, the appellate court decision noted that Petitioner
28 "knew that Martinez had brought his gun and intended to shoot someone." (See Pet'r's Ex. D.)

9

As pointed out by the superior court, "[a]n inmate's version of the offense may indicate a lack of insight and provide a nexus between the offense and his current dangerousness." (See Pet'r's Ex. E) (*citing* In re Shaputis, 44 Cal.4th 1241, 1260 (2008).)

The Governor further found troubling the fact that Petitioner was involved in a "tagging crew" at the time of the offense. Indeed, it was this group who Petitioner recruited for the murder.  However, the psychological report indicated that Petitioner's current gang affiliation was unknown and that Petitioner tended to downplay his involvement with the tagging crew.  Also, the Governor considered the fact that Petitioner was found guilty of a serious rules violation in 2002 for participating in a race-motivated melee.  Although Petitioner was determined not to be a violent actor in the melee, he was still found guilty of the offense.  The superior court noted that the Governor could consider these factors as relevant to a determination whether Petitioner was suitable for parole pursuant to Cal. Code Regs., tit. 15, § 2402(b).

After considering the factors in favor of suitability, the Governor concluded that the positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability.  In light of the circumstances of Petitioner's commitment offense, his lack of insight, his disciplinary history, his uncertain gang status, the short amount of time Petitioner had been incarcerated compared to his sentence, the state courts' determination that there was some evidence to support the Governor's 2008 decision is not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record.  Accordingly, federal habeas corpus relief is unavailable.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with

the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

    Dated:   **August 31, 2010**             /s/ **Gary S. Austin**
                                                                   UNITED STATES MAGISTRATE JUDGE